UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LAUFER GROUP INTERNATIONAL, LTD.,

Plaintiff,

-against-

SONDER DISTRIBUTION USA, LLC, et al.,

Defendants.

Case No. 1:22-cv-03313 (JLR)

**OPINION AND ORDER**

JENNIFER L. ROCHON, United States District Judge:

Plaintiff Laufer Group International, Ltd. ("Plaintiff" or "Laufer") brings this admiralty action against Sonder Distribution USA, LLC ("Sonder" or "Sonder Distribution"), Remo Polselli ("Polselli"), Michael Klein ("Klein") and Marc Abrams ("Abrams," and together with the other defendants, "Defendants") for breach of a contract involving the transport of goods. *See* ECF No. 1 ("Compl."); ECF No. 16 ("First Amended Complaint" or "FAC"). Defendants have brought a counterclaim, also for breach of contract, against Plaintiff. *See* ECF No. 19 ("Ans."). Now before the Court is Plaintiff's motion for summary judgment on its claim for breach of the bills of lading, jointly and severally against all Defendants, and for judgment on Defendants' counterclaim. *See* ECF Nos. 40 ("Br."), 47 ("Reply"). Defendants oppose that motion. *See* ECF No. 44 ("Opp."). Plaintiff also filed a statement of undisputed facts pursuant to Local Rule 56.1. *See* ECF No. 41 ("56.1"). For the reasons set forth below, Plaintiff's motion is GRANTED in part and DENIED in part.

## BACKGROUND

Before presenting the undisputed facts in this case, the Court must consider, as a threshold question, the source of those facts. Local Rule 56.1 provides that, "[u]pon any motion for summary judgment . . . , there shall be annexed to the notice of motion a separate, short and

concise statement, in numbered paragraphs, of the material facts as to which the moving party

contends there is no genuine issue [of fact] to be tried."  S.D.N.Y. Local Rule ("Local Rule")

56.1(a).  Under that rule, a party opposing a motion for summary judgment "shall" file "a

correspondingly numbered paragraph responding to each numbered paragraph in the statement of

the moving party," as well as a statement of facts it contends are in dispute.  *Id.* 56.1(b).  Further,

"[e]ach statement by the movant or opponent . . . , including each statement controverting any

statement of material fact, must be followed by citation to evidence which would be admissible."

*Id.* 56.1(d).  If the party opposing summary judgment fails to "specifically controvert[]" the

moving party's statement of material facts by "[e]ach numbered paragraph," then the moving

party's facts "will be deemed to be admitted for purposes of the motion."  *Id.* 56.1(c); *see also*

*Dusanenko v. Maloney*, 726 F.2d 82, 84 (2d Cir. 1984) (per curiam) (noting that failure to

oppose a statement of undisputed facts, or to assert any material facts in dispute under the local

rules, deems the moving party's facts admitted); *Gubitosi v. Kapica*, 154 F.3d 30, 31 n.1 (2d Cir.

1998) (per curiam) (stating that because opposing party failed to file a counter Rule 56.1

statement, material facts in the moving party's Rule 56.1 statement are deemed admitted);

*Maresco v. Evans Chemetics*, 964 F.2d 106, 111 (2d Cir. 1992) ("Because [the opposing party]

did not respond to [the moving party's Rule 56.1 statement], [Rule 56.1] requires that they be

deemed to be admitted for purposes of summary judgment." (internal quotations omitted));

*Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party then

fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be

deemed admitted."); *Kelly v. City of New York*, 576 F. App'x 22, 24 n.2 (2d Cir. 2014) (finding

no error in the district court "deem[ing] the] plaintiffs' Local Rule 56.1 Statement admitted where

[the] defendants' Rule 56.1 responses were general denials and admissions that did not meet the

substance of [the] plaintiffs['] allegations"); *see also Cap. One, Nat'l Ass'n v. Paige Hosp. Grp., LLC*, 616 F. Supp. 3d 283, 285 (S.D.N.Y. 2022) ("Defendants have not opposed Capital One's motion for summary judgment and thus have not controverted any of those facts."); *Taylor & Fulton Packing, LLC v. Marco Int'l Foods, LLC*, No. 09-cv-02614 (ILG), 2011 WL 6329194, at *4 (E.D.N.Y. Dec. 16, 2011) ("Where a nonmovant fails to file a statement or files a deficient statement, courts frequently deem all supported assertions in the movant's statement admitted and find summary judgment appropriate.") (collecting cases).

Plaintiff filed a Rule 56.1 statement of undisputed facts, which cites to testimony, affidavits, and other evidence. *See generally* 56.1. Defendants have not filed any opposition to Plaintiff's statement of undisputed facts. In opposition to Plaintiff's motion, the only purported evidence that Defendants submitted to the Court are affidavits filed with their motion in the names of Defendant Klein and Defendant Abrams, the latter being unsigned. *See* ECF Nos. 45 ("Klein Decl."), 46 ("Abrams Decl."). The declarations do not specifically refute or otherwise controvert, through admissible testimony, any of the numbered paragraphs of undisputed facts asserted by Laufer in its motion. *See* Local Rule 56.1(b)-(d). Accordingly, the facts set forth in Plaintiff's 56.1 statement are deemed admitted to the extent that they are supported by the evidence in the record.

Those facts follow. Plaintiff Laufer is a non-vessel operating common carrier ("NVOCC"), which is a company that does not itself physically transport goods, but "instead contracts with steamship lines to provide such transportation." 56.1 ¶¶ 1-2. Laufer is licensed as a NVOCC with the Federal Maritime Commission. *Id.* ¶ 1. As a NVOCC, Laufer "does not own or operate vessels, containers, or trucks but instead acts as an intermediary" between the actual vessel operating common carriers and the customers that are seeking to have their goods

shipped "via ocean transportation." *Id.* ¶ 4.  As part of this arrangement, Laufer books space on the ocean vessel, and arranges for the delivery of the goods, their loading onto the vessel, their eventual receipt in the United States, and any further ground transportation, including final delivery.  *Id.* ¶ 5.  Laufer also is responsible for paying the carriers and other entities involved in the transportation; the shipper, or consignee of the goods, then pays Laufer.  *Id.* ¶ 6.

Sonder manufactures and sells home furnishings.  *Id.* ¶ 8.  Sonder hired Laufer to import certain goods (the "Goods") from Asia to the United States.  *Id.* ¶ 67.  Sonder arranged for the transportation of those Goods, which were transported overseas between January and November 2021.  *Id.* ¶ 68.  All of the Goods were delivered to Sonder except for two containers, which Lauder did not release because Sonder failed to pay certain outstanding invoices.  *Id.* ¶ 69.  Indeed, Sonder regularly paid Laufer's invoices late in large part due to cash flow problems.  *See id.* ¶¶ 70-71.

Sonder attempted to negotiate the release of the containers, and the individual defendants communicated with Laufer.  Defendant Polselli was "a CEO Managing Member for Sonder" at the time of the parties' transaction.  *Id.* ¶ 9.  Marc Abrams was "President of Sonder" at the time, and he had arranged for the buyer of some of the relevant Goods.  *Id.* ¶¶ 10 (citing ECF No. 41-3 ("Dfs. Initial Discl."), 11.  Laufer's 56.1 statement provides that Abrams negotiated "extensively" with Laufer representatives about the unpaid invoices.  *Id.*  Despite this characterization, the facts and evidence underlying Laufer's 56.1 statement demonstrate the following: Abrams was included on correspondence in October and November 2021 with Laufer and Polselli regarding the unpaid invoices, *id.* ¶¶ 12-38; during those communications, Abrams wrote to Laufer specifically about the release of one container in Houston, *id.* ¶¶ 18, 24, and Abrams was part of a call involving executives at Laufer about the unpaid invoices, which

Polselli did not join, *id.* ¶ 31.  In that call, Abrams told Laufer that he would talk to Polselli and arrange a payment plan that never came to fruition.  *Id.* ¶¶ 32-33.  Abrams later reiterated he "would attempt to get a commitment on a payment plan on behalf of Sonder."  *Id.* ¶ 35.  In December 2021, Abrams wrote to Laufer representatives to say that Polselli was working on a payment plan.  *Id.* ¶¶ 36-38.

Separately, Michael Klein was the "Chief Financial Officer ('CFO') of Sonder" at the time of the shipments.  *Id.* ¶ 39 (citing Dfs. Initial Discl.).  Laufer sent Klein (and Polselli) the invoices starting in January 2021.  *Id.* ¶¶ 40-41.  He was therefore also included on emails from Laufer following up on the status of the payments.  *See id.* ¶¶ 43, 49-65 (describing communications that Klein was "included in").  On January 19, 2021, Polselli also instructed Klein to make a payment to Laufer, but Klein did not make the payment that month.  *Id.* ¶¶ 43-45.  Laufer followed up on February 2 and 4, 2021, and Klein then responded "that a deposit of $10,550.93 had been made into Laufer's account."  *Id.* ¶¶ 46-47.  Laufer informed Klein that the deposit was only a partial payment.  *Id.* ¶¶ 48-49.

To ensure full payment, Laufer regularly informed Sonder that it would not release the last two containers until all payments were made.  *Id.* ¶ 72.  Laufer rejected Sonder's attempts to secure release of those two containers without completing payment, but Laufer did attempt to work with Sonder to "bring its account due."  *Id.* ¶ 73; *see also id.* ¶¶ 12-38 (describing negotiations involving Defendants Polselli and Abrams), 39-66 (describing negotiations involving Defendants Polselli and Klein).  During the negotiations between Laufer and Sonder, Sonder never disputed the amount of the outstanding payments or the "reasonableness of the invoices themselves."  *Id.* ¶ 73.  Laufer contends that, as of the filing of its Local 56.1 Statement on January 23, 2023, Defendants owe the principal amount of $236,266.21 "in freight, per diem,

demurrage, and related charges, plus interest in the amount of $52,270.52" that is continuing to accrue. *Id.* ¶ 75.[1]

Laufer points to several agreements in support of its breach of contract claim. First, as part of the parties' arrangement, on September 30, 2020, Polselli, on behalf of Sonder, signed a Credit and Security Agreement ("CSA"). *Id.* ¶ 77; *see also* ECF No. 41-9 ("CSA"). That agreement provides:

> Credit privileges may be suspended for any failure to comply with this Agreement. If Customer fails to perform any obligation under this Agreement of any tariff, Bill of Lading or contract with Laufer, Laufer may immediately terminate this Agreement without demand or notice; require that all amounts owed become immediately due and payable; refuse to issue or release Bills of Lading marked "prepaid" or "freight prepaid" even though cargo was booked; foreclose its lien(s) and security interest on any and all cargo Laufer possesses; and exercise any other right or remedy available under law. Customer acknowledges that it has read and understands Laufer's Bill of Lading terms and conditions, a copy of which has been provided to Customer.

CSA § 4; *see also* 56.1 ¶¶ 78-79. The CSA further provides that "Customer shall remain absolutely responsible and unconditionally liable for all payments due by Customer to Laufer" and that "[n]othing herein contained shall preclude Laufer" from exercising its rights, including the extension of credit. CSA §§ 2, 5; *see also* 56.1 ¶ 80.

Second, when Sonder engaged Laufer to ship goods, "Laufer issued a bill of lading that governed the transportation of the Goods." 56.1 ¶ 81. The "bill of lading" serves as the "contract of carriage" for the transport, and "specifies the rights and obligations of the parties." *Id.* ¶ 82. Laufer issued these "bills of lading" for each shipment, and each named Sonder as the "consignee." *Id.* ¶¶ 83-84; *see* ECF No. 41-10 ("Bills of Lading"). These Bills of Lading

---

[1] In its Amended Complaint, Laufer alleged that Defendants owe Laufer $234,316.21, plus interest at the annual rate of 18% on unpaid freight that totaled $17,293.57 as of September 7, 2022. FAC at 6.

mention that certain conditions are "set out on the reverse side hereof," but no terms appear to be on the reverse of each document. *See* Bills of Lading at *passim*. However, the longer-form Rules Tariff is published by Descartes Ocean Compliance ("Descartes"), a tariff-publisher, and includes the Bill of Lading terms and conditions that were in effect during the period of the parties' agreement. 56.1 ¶¶ 86-87; *see also* ECF No. 41-12 ("Rules Tariff"); ECF No. 41-11 ("Terms & Conditions").

Both the Terms and Conditions – entitled the "Combined Transport Bill of Lading" – and the Rules Tariff provide for certain obligations between "Carrier" (Laufer), and any "Merchant," which includes "the Shipper, the Receiver, the Consignor, the Consignee . . . and any person having a present or future interest in the Goods or any person acting on behalf of any of the above-mentioned persons." Terms & Conditions §§ 2.2, 2.3; Rules Tariff §§ 2.2, 2.3. They further provide that "Carrier shall have a general lien on any and all property (and documents relating thereto) of Merchant in its possession, custody or control or en route, for all claims for charges, expenses or advances incurred by Carrier in connection with any shipments of Merchant," Terms & Conditions § 17; Rules Tariff § 17, and that "Merchant shall remain liable for all charges hereunder notwithstanding any extension of credit to the freight forwarder or broker by Carrier," Terms & Conditions § 16.2; Rules Tariff § 16.2; *see also* 56.1 ¶ 89 (reciting clauses of Terms & Conditions in detail). The Rules Tariff further provides that "[n]o servant or agent of Carrier shall have power to waive or vary any of the terms hereof unless such variation is in writing and is specifically authorized or ratified in writing by Carrier." Rules Tariff § 25. Attached to every invoice were Laufer's Standard Terms, which contain similar – though not identical – provisions, and which Polselli agreed to when he signed the CSA. *See* 56.1 ¶¶ 96-97; *see also* ECF No. 41-13 ("Standard Terms"). Each page of the invoice further states that "[f]inal

responsibility for payment rests with shipper or consignee as per terms and conditions of
LAUFER GROUP INTERTNATIONAL LTD. Ocean Bill of Lading."  Standard Terms at 1-2;
*see also* 56.1 ¶ 101.

These agreements, together with the Bills of Lading, make clear that the maximum
liability for Laufer, as the Carrier, is $500 "per package or customary freight unit."  Bills of
Lading at *passim*; Rules Tariff § 7.1 ("Unless otherwise mandated by compulsorily applicable
law, Carrier's liability for compensation for loss of or damage to goods shall in no case exceed
the amount of US$500 per package or per customary freight unit . . . ."); Terms & Conditions
§ 7.1 (same).  Both the Rules Tariff and the Terms and Conditions further provide that "Carrier
does not undertake that the goods shall be delivered at any particular time or for any particular
market and shall not be liable for any direct or indirect losses caused by any delay."  Rules Tariff
§ 6.5; Terms & Conditions § 6.5; *see also* Standard Terms § 8(a).  Moreover, consequential
damages are barred.  Rules Tariff § 6.1; Terms & Conditions § 6.1; Standard Terms § 8(d).  The
agreements also make clear that Laufer has a general lien on the property in its possession,
custody, or control.  CSA § 4; Rules Tariff § 17; Terms & Conditions § 17; Standard Terms § 13.
Finally, the Rules Tariff and Terms and Conditions provide that "[t]he Shipper, consignee,
holder hereof, and owner of the goods, and their principals, shall be jointly and severally liable to
Carrier for the payment of all freight and charges, . . . . [and] pay the expenses of collection and
litigation, including reasonable attorneys' fees."  Rules Tariff § 16.4; Terms & Conditions
§ 16.4.

When Defendants failed to pay the outstanding invoices, Laufer brought suit for breach
of contract on April 22, 2022.  *See* Compl.  After Laufer amended its Complaint on September 7,
2022, *see* FAC, Defendants filed their answer and asserted a counterclaim, alleging that Laufer

had agreed to release one of the containers as long as Defendants paid $40,000, Ans. at 3. Laufer filed a motion for summary judgment on January 23, 2023, which is now fully briefed before the Court.

## LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, a moving party is entitled to summary judgment if, on any claim or defense, that party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. ("Rule") 56(a). A fact is "material" only if it "might affect the outcome of the suit under the governing law," and a dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding a summary judgment motion, courts "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 77 (2d Cir. 2010) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)). Rule 56, however, "does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute." *Amnesty Am. v. Town of West Hartford*, 288 F.3d 467, 470 (2d Cir. 2002). It is instead the parties' responsibility to "point out" contested facts for the Court, and to "clarify the elements of the substantive law which remain at issue because they turn on contested facts." *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 292 (2d Cir. 2000).

"When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim." *Simsbury-Avon Pres. Soc'y, LLC v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d Cir. 2009) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23

(1986)).  In that event, "the nonmoving party must come forward with admissible evidence

sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment."  *Id.*

(citing *Celotex Corp.*, 477 U.S. at 322-23).  "Where no rational finder of fact 'could find in favor

of the nonmoving party because the evidence to support its case is so slight,' summary judgment

must be granted."  *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (quoting *FDIC v.*

*Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010)).

　　　　Under Rule 56(e), "[i]f a party fails to properly . . . address another party's assertion of

fact," the court may "consider the fact undisputed for purposes of the motion" or "grant summary

judgment if the motion and supporting materials – including the facts considered undisputed –

show that the movant is entitled to it."  Nevertheless, even "where the non-moving party chooses

the perilous path of failing to submit a response to a summary judgment motion, the district court

may not grant the motion without first examining the moving party's submission to determine if

it has met its burden of demonstrating that no material issue of fact remains for trial."  *Cap. One,*

*Nat'l Ass'n*, 616 F. Supp. 3d at 287 (quoting *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373

F.3d 241, 244 (2d Cir. 2004)).  If the moving party has not met its burden, summary judgment is

inappropriate.  *Id.*  Furthermore, when "determining whether the moving party has met this

burden of showing the absence of a genuine issue for trial, the district court may not rely solely

on the statement of undisputed facts contained in the moving party's Rule 56.1 statement" and

must also "be satisfied that the citation to evidence in the record supports the assertion."  *Id.*

(quoting *Vt. Teddy Bear Co.*, 373 F.3d at 244).  The moving party's legal theory must also be

"sound."  *Id.* (internal quotation marks omitted).

## DISCUSSION

### I.  Laufer's Breach of Contract Claim

Laufer argues that it is entitled to summary judgment because there are no genuine

disputes of material fact regarding whether Defendants are jointly and severally liable for

payment of the freight and related charges arising from the transportation of the containers.  *See*

Br. at 1-2, 7-13.  Defendants contend that summary judgment is not warranted because they did

not have notice of the Terms and Conditions or the Rules Tariff (which provide for joint and

several liability), and because Abrams and Klein are not principals of Sonder Distribution.  Opp.

at 3-5.  Defendants do not contend that Sonder has met its payment obligations or otherwise

dispute Laufer's breach of contract claim.

As an initial matter, the contracts at issue here are typical in maritime actions.  "A bill of

lading is a document normally issued by the shipowner when goods are loaded on its ship, and

may, depending on the circumstances, serve as a receipt, a document of title, a contract for the

carriage of goods, or all of the above."  *Asoma Corp. v. SK Shipping Co.*, 467 F.3d 817, 823 (2d

Cir. 2006).  When a bill of lading involves the carriage of goods by sea, and the "dispute is not

inherently local, federal law controls the contract interpretation."  *Maersk, Inc. v. Neewra, Inc.*

("*Neewra*"), 687 F. Supp. 2d 300, 328 (S.D.N.Y. 2009) (quoting *Norfolk S. Ry. Co. v. James N.*

*Kirby, Pty Ltd.*, 543 U.S. 14, 22-23 (2004)), *aff'd sub nom. Maersk, Inc. v. Sahni*, 450 F. App'x 3

(2d Cir. 2011); *see also Asoma Corp.*, 467 F.3d at 823.  Federal common law requires that a

contract for carriage of goods by sea be "construed like any other contract[]: by [its] terms and

consistent with the intent of the parties."  *Neewra*, 687 F. Supp. 2d at 328 (internal quotation

marks and citations omitted).  Nevertheless, a bill of lading "should be carefully, if not

restrictively construed."  *Id.* (quoting *Cont'l Ins. Co. v. Polish Steamship Co.,* 346 F.3d 281, 283

(2d Cir. 2003)).  Indeed, "bills of lading are contracts of adhesion and, as such, are strictly

construed against the carrier."  *Id.* (quoting *Allied Chem. Int'l Corp. v. Companhia de*

*Navegacao Lloyd Brasileiro,* 775 F.2d 476, 482 (2d Cir. 1985)) (collecting cases).  Keeping

these principles in mind, the Court turns to the parties' arguments.

### A.  Notice of Terms and Conditions

Defendants appear to contend that there are issues of fact regarding whether they are

jointly and severally liable for any breach of contract by Sonder.  *See generally* Opp.[2]

According to Defendants, because they "never received, consent [sic] to, signed, or ratified the

Combined Transport Bill of Lading," – that is, the Terms and Conditions or the Rules Tariff –

they are not bound by its terms.  *See id.* at 2-3.  Laufer argues that, by failing to oppose Laufer's

56.1 statement, Defendants have admitted to having notice of both the Rules Tariff and the

Terms and Conditions, and, in any event, Polselli signed the CSA, and Sonder received invoices,

both of which contain a provision referring to the Terms and Conditions.  *See* Reply at 2, 9.

Finally, Laufer argues that Defendants were on constructive notice of the Terms and Conditions

because they were in the tariff, which is filed with the Federal Maritime Commission.  *Id.* at 9.

---

[2] Defendants' opposition papers are at times difficult to decipher.  Defendants title their brief "Memorandum of Law in Opposition To Plaintiff's Motion for Summary Judgment and In Support of Defendant Klein and Abrams' Cross Motion for Summary Judgment," but the five-page submission contains no citations to evidence or the record, and merely floats concepts such as lack of notice and lack of privity, leaving the Court to divine their applicability to Plaintiff's motion, or the contracts at issue.  *See Versatile Housewares & Gardening Sys., Inc. v. SAS Grp., Inc.*, No. 09-cv-10182 (SHS), 2016 WL 4064036, at *4 (S.D.N.Y. July 29, 2016) ("This is a perfect example of the 'drive by briefing' in this action: the parties float a brief thought in a memorandum, provide sparse – usually no – record or case substantiation for it, and leave the Court to divine the point."); *see also Yang Feng Zhao v. City of New York*, 656 F. Supp. 2d 375, 385 (S.D.N.Y. 2009) (noting that a party opposing summary judgment must rely on evidence, not on "pleadings or on merely conclusory factual allegations").  Defendants have not filed a notice of motion for their own supposed motion for summary judgment, and the Court sees no basis to treat their cursory opposition as a standalone motion.

The Court agrees with Plaintiff, and concludes that there is no genuine dispute of material fact that Sonder had notice of the terms of conditions of Laufer's Bill of Lading.  As Laufer argues, some courts in this Circuit have observed that the filing of a tariff can put a shipper on constructive notice of the terms of that tariff when the filing of those terms is required by law.  *See Komori Am. Corp. v. Howland Hook Container Terminal, Inc.*, No. 97-cv-07243 (JSM), 1998 WL 614194, at *6 (S.D.N.Y. Sept. 14, 1998) ("The mere filing of a tariff by a stevedore is deemed to give constructive notice to shippers only of those terms as to which filing is required by law."); *Hoogovens Estel Verkoopkantoor, B.V. of Ijmuiden v. Ceres Terminals, Inc.*, No. 80-cv-06383 (DBB), 1983 WL 604, at *5 (S.D.N.Y. Apr. 26, 1983) (same); *see also Mech. Tech. Inc. v. Ryder Truck Lines, Inc.*, 776 F.2d 1085, 1088 (2d Cir. 1985) (concluding that sophisticated parties had constructive knowledge of rates in published tariff); *Fed. Ins. Co. v. Great White Fleet (US) Ltd.*, No. 07-cv-02415 (GEL), 2008 WL 2980029, at *14 (S.D.N.Y. Aug. 1, 2008) (recognizing that even if a party could have constructive notice of a tariff, the court would need to see the tariff's contents and otherwise have evidence that it was required by law to be published).[3]  However, some courts have applied a different standard, requiring a carrier to reasonably communicate the terms and conditions to its passengers or other parties to the agreement, at least when it comes to the enforceability of a forum selection clause.  *See, e.g.*, *MTS Logistics, Inc. v. Innovative Commodities Grp., LLC*, 442 F. Supp. 3d 738, 748 (S.D.N.Y. 2020) ("[I]n the context of sea carriers imposing limitations on their passengers' rights to sue,

---

[3] The cases cited by Plaintiff, including *Kerr S.S. Co. Inc. v. Petroco, Inc.*, No. 90-cv-01980 (RLC), 1991 WL 64199, at *2 (S.D.N.Y. Apr. 18, 1991) and *Costa Line Cargo Servs., Inc. v. McGraw-Edison Co.*, 623 F. Supp. 51, 54 (S.D.N.Y. 1985), mention that a tariff has the effective force of law, but do not address constructive notice.  The Court is not persuaded that they are applicable on these facts, but, because the Court concludes that Sonder otherwise had notice of the Terms and Conditions, need not address these arguments.

that the test for what constitutes reasonable communication is whether the carrier 'had done all it reasonably could to warn the passenger that the terms and conditions were important matters of contract affecting his legal rights.'" (quoting *Silvestri v. Italia Societa Per Azioni Di Navigazione*, 388 F.3d 11, 17 (2d Cir. 1968)).

The Court need not determine whether Sonder had constructive notice due to the publishing of the tariff because, based on the undisputed record before the Court, Sonder otherwise had actual notice of the Terms and Conditions. As an initial matter, Defendants have failed to oppose facts put forth by Laufer setting forth the terms of the parties' agreements, permitting the Court to deem them admitted. *See supra* Background. But even aside from this failure, the undisputed evidence demonstrates that Sonder was on notice of these terms. Specifically, on September 30, 2020, Polselli signed the CSA on behalf of Sonder. 56.1 ¶ 77; *see* CSA. The CSA provides that Sonder "acknowledges that it has read and understands Laufer's Bill of Lading terms and conditions, a copy of which has been provided to" Sonder. CSA § 4. That document was signed by Polselli before Laufer transported any goods. *See* 56.1 ¶ 77; *see also* CSA. Additionally, "[e]ach invoice" contained a provision informing Sonder about the Terms and Conditions in the Bill of Lading. 56.1 ¶ 101; *see also* ECF No. 41-9 (("Polselli Dep.") at 18:22-19:2 (admitting to reviewing Laufer invoices), 24:22-25:2 (admitting that the invoices referred to the Terms and Conditions)). That provision states that that "[f]inal responsibility for payment rests with shipper or consignee as per terms and conditions of LAUFER GROUP INTERNATIONAL LTD. Ocean Bill of Lading." Standard Terms at 1-2.[4]

---

[4] To be sure, the individual Bills of Lading issued when shipments were made, and on which Sonder is named the Consignee, also refer to Terms and Conditions. *See* Bills of Lading. The Bills of Lading state that the shipment is subject to certain conditions "set out on the reverse side hereof, to which the Shipper and/or Consignee [Sonder] agree." *E.g., id.* at 2. However, the documents in the record that Laufer has identified as Bills of Lading do not appear to have any

The Terms and Conditions to which these documents refer are contained in the Rules Tariff, which is published by Descartes Cohen Compliance.  *See* 56.1 ¶ 86.  By signing the CSA specifically, Polselli affirmed that he understood the terms, and that a copy had been provided to him.[5]  Therefore, at the very least, Sonder – through Polselli – had notice of the Terms and Conditions and their relevance to the parties' shipping arrangement.  *See Salis v. Am. Exp. Lines*, 566 F. Supp. 2d 216, 222 (S.D.N.Y. 2008) (concluding that party was on notice that terms and conditions of bill of lading applied to shipment based on language in receipt), *aff'd in part, vacated in part on other grounds*, 331 F. App'x 811 (2d Cir. 2009); *New Moon Shipping Co. v. MAN B & W Diesel AG*, 121 F.3d 24, 30 (2d Cir. 1997) ("We recognize that maritime contracts may validly incorporate by reference terms from other documents or agreements.  Under general principles of contract law, a contract may incorporate another document by making clear reference to it and describing it in such terms that its identity may be ascertained beyond doubt." (internal citations omitted)); *Maersk Inc. v. Am. Midwest Commodities Exp. Cos.* ("*Am. Midwest*"), No. 97-cv-00475 (NRB), 1998 WL 473945, at \*4 (S.D.N.Y. Aug. 10, 1998) (finding president of shipper had notice of bill of lading even though he testified that he never read the

---

terms on their reverse side.  Nor does Laufer argue in any of its papers that the terms were available on each Bill of Lading.  *See BRM Trades, LLC v. All-Ways Forwarding Int'l, Inc.*, No. 21-cv-07151 (VB), 2022 WL 2788087, at \*1 n.1 (S.D.N.Y. July 15, 2022) (noting that terms and conditions are usually provided on the reverse side of a bill of lading and therefore incorporated into the bills of lading).

[5] To the extent Defendants argue that, having never seen the Terms and Conditions, they are not bound by them, the Court finds that argument conclusory and otherwise rejects it.  Courts in this District have found that "[a] consignee can also become a party to a negotiable bill of lading and thereby assume obligations under it by presenting the negotiable bill of lading to the carrier and accepting the goods under it."  *Zim Am. Integrated Shipping Servs. Co., LLC v. Sportswear Grp., LLC*, No. 20-cv-04838 (LJL), 2021 WL 5450117, at \*5 (S.D.N.Y. Nov. 18, 2021).  Here, except for the final two containers, Defendants received – and therefore accepted – most of the shipments, implying that they consented to be bound by the Bills of Lading.

"fine print"); *Estes Express Lines v. Whatman Hardwoods*, No. 19-cv-00278 (DJN), 2019 WL 2273847, at *7 (E.D. Va. May 28, 2019) (noting that "courts have found that incorporation by reference of long-form bills of lading or rules tariffs provides sufficient notice of incorporated additional terms even when a shipper lacked actual possession of the terms, so long as the shipper could readily access those terms").  The Court thus rejects Defendants' argument, and concludes that there are no genuine disputes of material fact as to whether Sonder was on notice of the Terms and Conditions of Laufer's Bills of Lading.

Whether Sonder had notice of the Terms and Conditions is the only argument Defendants make with respect to why summary judgment should be rejected as to Sonder and Polselli. Therefore, having rejected this argument, and because the Court otherwise concludes that Laufer has demonstrated that there are no genuine disputes of material fact as to liability for Sonder and Polselli, the Court GRANTS Laufer's motion with respect to Sonder and Polselli.

### B.  Liability of Abrams and Klein

Defendants next contend that Abrams and Klein are not jointly and severally liable under the Terms and Conditions because they are not "principals" of Sonder Distribution, as opposed to another Sonder entity.  *See* Opp. at 3-5.  As a general matter, "[c]ourts in this District have consistently upheld" provisions in bills of lading "that extend[] joint and several liability to principals" where "the principals to whom liability was extended were officers, directors or shareholders of the shipper."  *Neewra*, 687 F. Supp. 2d at 328.  Here, the Terms and Conditions state that "[t]he Shipper, consignee, holder hereof, and own of the goods, and their principals, shall be jointly and severally liable to Carrier for the payment of all freight and charges, . . . . [and] pay the expenses of collection and litigation, including reasonable attorneys' fees."  Rules Tariff § 16.4; Terms & Conditions § 16.4.  Sonder was the consignee.  *See, e.g.*, Bills of Lading.

Defendants also do not dispute that Polselli was a principal of Sonder.  *See generally* Opp. Therefore, the question for the Court is whether Abrams and Klein were acting as principals of Sonder during the time of the shipment and agreements, such that they are jointly and severally liable for the charges in dispute.

Courts in this Circuit look to the Restatement (Second) of Agency (1958) when considering principles of "agency" under federal maritime common law.  *Neewra*, 687 F. Supp. 2d at 328 (citing *Dow Chem. Pac. Ltd. v. Rascator Mar. S.A.*, 782 F.2d 329, 339-40 (2d Cir. 1986); *In re M/V Rickmers Genoa Litig.*, 622 F. Supp. 2d 56, 73 (S.D.N.Y. 2009)).  "A basic principle of agency law is that an agency relationship exists only if the agent is acting on behalf of and subject to the control of the principal."  *Id.* (citing Restatement (Second) of Agency §§ 14-15).  "Generally, 'principals to whom liability [has been] extended [are] officers, directors, or shareholders of the shipper.'"  *Laufer Grp. Int'l, Ltd. v. Standard Furniture Mfg. Co., LLC*, No. 19-cv-10885 (JPO), 2020 WL 4735123, at *4 (S.D.N.Y. Aug. 14, 2020) (alterations in original) (quoting *Neewra*, 687 F. Supp. 2d at 328); *see also Maersk Inc. v. Atcom Indus.*, 73 F. Supp. 2d 387, 391 (S.D.N.Y. 1999) (concluding that individual defendants were not principals of party to bill of lading because there was no evidence that they were "officer[s], director[s] or shareholder[s]" of that party); *Am. Midwest*, 1998 WL 473945, at *4 (concluding that president of shipper was principal).  Importantly, "the party asserting that a relationship of agency exists generally has the burden in litigation of establishing its existence."  *Nippon Yusen Kaisha v. FIL Lines USA Inc.*, 977 F. Supp. 2d 343, 350 (S.D.N.Y. 2013) (internal citation omitted).

Laufer contends that, based on their email signatures and Defendants' Initial Disclosures, both Abrams and Klein were acting "on behalf of" Sonder.  *See* Br. at 10-13; Reply at 11-13.[6]  In response, Defendants have submitted affidavits, albeit one unsigned, that purport to swear that Klein and Abrams are employed by a different, but related, Sonder company: Sonder Living. *See* Abrams Decl.; Klein Decl.  The Court concludes that, even if it disregards Defendants' cursory statements, Laufer has failed to put forward sufficient undisputed evidence for the Court to conclude that Klein and Abrams were principals of Sonder Distribution.

By failing to file a counterstatement to Laufer's 56.1 statement, Defendants have admitted that Marc Abrams was "President of Sonder" at the time of the shipments, and that Michael Klein was the "Chief Financial Officer ('CFO') of Sonder" at the time of the shipments. 56.1 ¶¶ 10-11, 39.  Indeed, Defendants also admitted as much in their initial disclosures.  *See* Dfs. Initial Discl.  A review of the underlying evidence reveals, however, that Abrams and Klein were not necessarily acting as officers, and therefore principals, of Sonder *Distribution* as opposed to Sonder *Living*.  Even though Laufer employees communicated at times with both Klein and Abrams, these communications are not sufficient to establish that they were officers of Sonder Distribution.  First, Polselli included Abrams on emails with Laufer about payment.  *See* ECF No. 41-4 ("Oct/Nov. Emails"); ECF No. 41-6 ("Oct/Jan. Emails"); ECF No. 41-7 ("Jan. Emails").  For instance, on November 1, 2021, Polselli communicated with Erin Price about a deposit that Polselli said was made, and the subsequent release of a container; Polselli included Abrams on a thread and said he would confer with Abrams about whether payment had been made and containers released.  *See, e.g.*, Oct/Jan. Emails at 12-13 ("2 containers I thought were

---

[6] Plaintiff failed to comply with the Court's Individual Rule 3(C) by filing a reply memorandum that is 13 pages long.  However, the Court's analysis and ultimate rejection of Plaintiff's argument is unaffected by the three pages that exceed the Court's page limits.

being picked up today . . [sic] so as to avoid these fees . . [sic] will check with Marc").  Abrams

responded from a Sonder Living email address, saying that "our first priority is to release the

Houston order first."  *Id.* at 12.[7]  Abrams's email signature said "President," under which was a

hashtag (#sonderliving) and an image that appears to contain four words: Sonder, Living,

Distribution, Products.  *See id.*; *see also id.* at 2 (illustrating full signature and image).  Abrams

also attended a meeting with Laufer, where he said he would talk to Polselli and arrange a

payment plan that never came to fruition.  56.1 ¶¶ 32-33.  Abrams later reiterated that he "would

attempt to get a commitment on a payment plan on behalf of Sonder."  *Id.* ¶ 35.  Abrams

continued to communicate with Laufer employees to convey that "Remo Polselli Sr, the owner[,]

is working on a payment plan which you should have by EOD tomorrow.  But, I will advise you

that it will be conditioned on releasing and delivering the Houston container Laufer committed to

delivering last month and did not."  Oct/Jan. Emails at 2 (Dec. 2, 2021 email).  In the email

thread, the Laufer employees mention that they need a plan in place with "Sonder Living USA"

– the entity that Abrams and Klein now contend employs them.  *Id.* at 3-4.  While these emails

demonstrate that Abrams was involved in the communications between Sonder and Laufer, and

that he was even acting on behalf of Sonder Distribution at times, there is no evidence in the

record that Abrams was a principal of Sonder Distribution.  *See Neewra*, 687 F. Supp. 2d at 329

(concluding that evidence showed the individual defendant was involved in the scheme, but

viewed in the light most favorable to the defendants, did not establish that he was a principal).

Moreover, while Defendants' Initial Disclosures list Abrams as "President of Sonder," when

considering his email address and signature, this evidence is ambiguous as to his involvement

---

[7] Polselli, who is an undisputed principal of Sonder Distribution, also had a Sonder Living email address.  *See* Jan. Emails at 5 (including email sent to remo@sonderlivingus.com).

with – and officer status in – Sonder Distribution versus Sonder Living.  *See* Dfs. Initial Discl.;

Oct/Jan. Emails.  Considering the evidence in the record, and viewing it in the light most

favorable to Defendants, the Court concludes there is still a genuine issue of material fact as to

whether Abrams was a principal of Sonder Distribution, and therefore whether he was bound by

the terms of the Bills of Lading.  *See Neewra*, 687 F. Supp. 2d at 329.

The Court reaches the same conclusion with respect to Klein.  Indeed, there is even less

evidence in the record from which the Court could determine that he was a principal of Sonder

Distribution.  Klein received at least some invoices at the email address

michaelklein0122@gmail.com from Laufer in January 2021.  56.1 ¶¶ 40-41; Jan. Emails at 4-5.

Laufer also included him on emails following up on the status of the payments.  *See* Jan. Emails

at 1-5.  On January 19, 2021, in an email thread with Laufer employees, Polselli instructed Klein

to make a payment to Laufer.  *Id.* at 3.  Klein responded that "ownership is working on this

today."  *Id.*; *see* 56.1 ¶¶ 43-45.  Laufer followed up on February 2 and 4, 2021, to which Klein

responded "that a deposit of $10,550.93 had been made into Laufer's account."  56.1 ¶¶ 46-47;

*see* Jan. Emails at 2.  Laufer informed Klein that the deposit was only a partial payment.  Jan.

Emails at 2.  Polselli took over, saying that "[t]his will be cleared up this week."  *Id.*  From this

evidence, the Court can surmise that Klein was at times working on behalf of Sonder

Distribution, but cannot conclude, as a matter of law, that Klein was an officer or principal of

Sonder Distribution.  *See Neewra*, 687 F. Supp. 2d at 329.  This is consistent with how courts in

this District interpret terms in bills of lading; indeed, "[i]t would not comport with the Second

Circuit's rules of construction for bills of lading to conclude that, simply because a defendant

participated in a fraudulent scheme [or transaction] relating to a cargo shipment governed by a

bill of lading, he is automatically bound by and in violation of its terms."  *Id.* at 330.

Accordingly, as to Defendants Abrams and Klein, Laufer's motion for summary judgment is DENIED.

## II.     Defendants' Counterclaim for Breach of Contract

Finally, Laufer contends that it is entitled to summary judgment on Defendants' counterclaim for breach of contract because there are no material facts in dispute as to Laufer's exercise of its lien rights. *See* Br. at 13-15. Defendants do not address this argument in their opposition papers. *See generally* Opp.[8] Therefore, Defendants have waived any arguments that their counterclaim withstands Laufer's motion. *See, e.g.*, *Palmieri v. Lynch*, 392 F.3d 73, 87 (2d Cir. 2004) (noting that a party who does not "raise [an] argument in his opposition to summary judgment" waives that argument); *Ohr Somayach/Joseph Tanenbaum Educ. Ctr. v. Farleigh Int'l Ltd.*, 483 F. Supp. 3d 195, 206 n.6 (S.D.N.Y. 2020) ("Arguments not raised in a party's brief are deemed waived."). Even if the Court were to consider the merits of this counterclaim, the Court agrees with Laufer that there are no material facts in dispute with respect to the counterclaim. There is no evidence to support Defendants' contention that Laufer breached some vague agreement to release the shipment prior to payment in full, and there is no evidence in the record that such an agreement existed. *See generally* Ans. Accordingly, Laufer's motion for summary judgment as to Defendants' counterclaim is GRANTED.

## CONCLUSION

For the foregoing reasons, Laufer's motion is GRANTED in part and DENIED in part.

---

[8] Defendants only cursorily mention the counterclaim, saying that there are facts in dispute that preclude summary judgment as to "whether the Defendant Sonders' counterclaim for consequential damages is precluded by terms and conditions that the Defendants never received nor had any notice of." Opp. at 1. To the extent Defendants attempt to address Laufer's claim and Defendants' counterclaim at the same time by arguing that Sonder had no notice of the Terms and Conditions, that argument fails for the reasons discussed *supra* Discussion § I(A).

Laufer's motion for summary judgment for breach of the Bills of Lading is GRANTED with respect to Defendants Sonder and Polselli, and DENIED with respect to Defendants Abrams and Klein.  Defendants' counterclaim is also dismissed.

IT IS HEREBY ORDERED that the parties shall, within **14 days** of the date of this Opinion and Order, file a joint letter proposing at least three mutually agreeable dates to begin a jury trial as to Defendants Abrams and Klein.  The parties shall also include in such letter whether they request a referral to the Southern District of New York's mediation program or to the Magistrate Judge for a settlement conference.

IT IS FURTHER ORDERED that, within **45 days** of this Opinion and Order, the parties shall submit a joint pretrial order and the additional pretrial materials specified in this Court's Individual Rules.

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 39.

Dated:  September 28, 2023
New York, New York

SO ORDERED.

JENNIFER L. ROCHON
United States District Judge